```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3   UNITED STATES OF AMERICA      *    CRIMINAL NO. H-08-237
                                   *
 4   VERSUS                        *    Houston, Texas
                                   *    January 7, 2014
 5   OSCAR NAVA-VALENCIA           *    2:05 p.m.

 6                             SENTENCING
               BEFORE THE HONORABLE EWING WERLEIN, JR.
 7                  UNITED STATES DISTRICT JUDGE

 8   For the Government:

 9            Mr. James Henry Sturgis
              Office of U.S. Attorney
10            1701 W Hwy 83
              Suite 600
11            McAllen, Texas 78501

12

13   For the Defendant:

14            Mr. Mervyn Milton Mosbacker, Jr.
              Attorney at Law
15            2777 Allen Pkwy
              Suite 1000
16            Houston, Texas 77019

17

18   Court Reporter:

19            Fred Warner
              Official Court Reporter
20            515 Rusk Avenue
              Houston, Texas 77002

21

22   Also Present:
              Official Court Interpreter
23

24   Proceedings recorded by mechanical stenography, produced by
     computer-aided transcription
25
```

1          THE COURT:   Court calls for sentencing No. 8-237,

2    United States versus Oscar Nava-Valencia.

3              For the United States.

4          MR. STURGIS:   James Sturgis for the United States,

5    Your Honor.

6          THE COURT:   Thank you, sir.

7              And for defendant.

8          MR. MOSBACKER:   Mervyn Mosbacker for Mr.

9    Nava-Valencia, Your Honor.

10         THE COURT:   Thank you, sir.

11             It's correct, is it not, that the defendant was

12   adjudged guilty of Count 1 of the indictment pursuant to a

13   plea of guilty made in connection with a plea agreement?

14         MR. MOSBACKER:   That's correct, Your Honor.

15         THE COURT:   And have you received and read and had

16   opportunity for your client to have read to him in Spanish

17   the presentence investigation report and discuss it with him?

18         MR. MOSBACKER:   Yes, Your Honor.

19         THE COURT:   I have received and read in connection

20   with this sentencing the presentence investigation report

21   from the probation office.   I should correct that to say the

22   revised presentence investigation report dated September

23   14th, 2012, statement of the government at Document No. 55

24   that it has no objections, also a unopposed motion for leave

25   to file those, an announcement of no objections late, which

 1   is at Document 56.  That motion is unopposed; it's granted.

 2          The defendant's objections at Document No. 44,

 3   the defendant's sentencing memorandum, a number of letters,

 4   includes a large number of letters from family members,

 5   friends, others in support of the defendant and the addendum

 6   to the presentence report from the probation office dated

 7   September 14, 2012.

 8          Are these all of the matters that have been

 9   filed in connection with this sentencing?

10          MR. MOSBACKER:  Yes, Your Honor.

11          MR. STURGIS:  Yes, Your Honor.  In connection with

12   the sentencing, that's correct.

13          THE COURT:  All right.  I will rule on the

14   objections then.

15          The government has none.

16          The defendant's first three objections or

17   clarifications are to paragraph 4, paragraph 11, paragraph

18   12.  Paragraph 4's correction is agreed to by the government

19   and the probation office and is sustained.

20          Paragraph 11, clarification that the defendant

21   was involved only in the Cumepa or C-u-m-e-p-a transaction.

22   Of the four that are mentioned here, the government concurs

23   in that, although the government points out that the

24   defendant was involved in many other transactions.  And that

25   is accepted insofar as distinguishing these four transactions

1  here in paragraph 11.

2          In paragraph 12, clarifying that the three

3  other named persons there are not part of a discrete group in

4  company with the defendant, which is accepted by probation

5  and the government and is accepted as clarifying data.

6          The fourth objection is to paragraph 14

7  objecting that the defendant was not involved in 1200

8  kilograms of cocaine first mentioned in this paragraph as to

9  1250 kilograms that were to be delivered to this defendant

10 that was he says owned by others to he received by this

11 defendant, divided up by this defendant.  This ties in with

12 other references to other large quantities.

13          And the addendum to the presentence

14 investigation report adds lucid in clarification, it seems to

15 me, that the defendant Mora-Mondragon and others were jointly

16 engaged in jointly undertaking criminal activity, 1250

17 kilograms of cocaine, millions of dollars, I guess tens of

18 millions were to be received by this defendant.  But he was

19 aware that this was only part of an even larger quantity of

20 the magnitude which turned out to be 3100 kilograms.  While

21 he may not have known the details or exact numbers, he knew

22 that they were of magnitude, they were shipments of

23 comparable magnitude.  This was not something where you ship

24 1250 kilograms and then a few grams of cocaine on the side or

25 something.  These are big, major shipments.

1           And so, while the defendant undertakes to

2   minimize and avoid responsibility, it appears, for relevant

3   conduct and while he is held only for 1250 kilograms,

4   nonetheless he is also held accountable, may be held

5   accountable for the entire transaction, knowing as he did

6   that this was a part of, as he acknowledges, an even larger

7   transaction, and 3100 kilograms is certainly proportionate to

8   the amount that he, himself was to receive.  That objection

9   is denied with the words of clarification.

10          The fifth objection is to paragraph 15, and the

11  sixth objection is to paragraph 16.  Both of these, once

12  again, are stating that the defendant did not participate in

13  or was not aware of shipments of, in paragraph 15, 400

14  kilograms of cocaine mentioned there in 16, 1500 kilograms

15  mentioned there.  This is sustained as to the details of him

16  having detailed knowledge, that is to say, of the specific

17  quantities and amounts on these transactions.  But to the

18  extent the implication of the objection is to suggest that

19  the defendant was not aware that additional quantities of the

20  size and magnitude that he and others were engaged in, the

21  objection will be denied.

22          Paragraph, the seventh objection is to

23  paragraph 17 objecting that the defendant knew that another

24  1850 kilograms of cocaine was to be shipped along with the

25  1850, this is discussed before.  Defendant was, as he says,

not specifically aware of the amount of exactly 1850
kilograms until the entire combined load was stolen or seized
in Panama.  He says that's when he found out it was 3100.
But he knew that his 1250 kilograms were in another major
shipment, part of a major shipment.  And, therefore, he is
held responsible for this, as we already discussed, although
the Court will accept his statement that he may have not
known the exact size, but he did know that there was a very
large shipment of which his own 1250 was a part.

MR. MOSBACKER:  Your Honor, may I clarify something?
And I just don't believe it refers to the previous two
paragraphs, paragraph 15 and 16 and to Mora-Mondragon's
enterprise in general.

Just to clarify, Mora-Mondragon was not part of
my client's group.  He was an independent shipper
essentially.  He found a way to ship cocaine from Colombia to
Panama and Central America and then from Panama and Central
America to Mexico.  He contracted his services essentially on
the 1250 load.  So as to those two loads that I refer to in
paragraphs 15 and 16, those were completely separate
shipments that Mora-Mondragon undertook for other people not
related to my client's group.  That's what I wanted to
clarify.

THE COURT:  And I acknowledge that he did not know
the details of those.  But he knew that this man is in the

 1   business of shipping these big loads.

 2          MR. MOSBACKER:  Yes, Your Honor.

 3          THE COURT:  I mean, that's why he's in business with

 4   him and dealing with him --

 5          MR. MOSBACKER:  That's correct, Your Honor.

 6          THE COURT:  -- to deliver tens of millions in

 7   cocaine.  So this is not surprising to the defendant,

 8   although the defendant may not have none of the particular

 9   shipments.  All right.  I will accept that.

10          MR. MOSBACKER:  Yes, Your Honor.  It was just a, I'm

11   sure, Mr. Mora-Mondragon's business practice not to inform

12   everybody who he was shipping cocaine for.

13          THE COURT:  Right.  But if he was going to tell

14   anyone, he would have told your client probably.

15          MR. MOSBACKER:  Oh, I don't think so, Your Honor.

16          MR. STURGIS:  That's probably not necessarily true,

17   Your Honor.

18          MR. MOSBACKER:  Their relationship was not that

19   great.

20          THE COURT:  All right.

21              The next objection, No. 8, to paragraphs 20 and

22   21 clarifying that Mora-Mondragon told the defendant's

23   associate Guzman of the loss of the Cumepa load; and that's

24   accepted as additional information, and objecting that

25   Mora-Mondragon had paid for the loss.

1           The PSR actually says in paragraph 21, I
2  believe, that he paid a portion of the loss and does not say
3  that he had paid for all of the loss or paid for the loss
4  without that qualification.  This does not affect the
5  guidelines in any event.
6           MR. MOSBACKER:  No, Your Honor.
7           THE COURT:  All right.
8           Paragraph 22 is for the next objection lodged.
9  This would be Objection No. 9, clarifying that the defendant
10 declined to invest in a load of cocaine to be shipped to
11 Italy, which load was seized.  The defendant had no loss, but
12 he clarifies that the meeting held by those who are engaged
13 in this business that the defendant was engaged in in
14 shipping large loads of cocaine was held not in the
15 defendant's own home but rather in the defendant's office
16 space when the counsel or whoever it was gathered in the
17 meeting determined that Bruno should be held responsible for
18 the loss, Bruno being the individual who has been since
19 missing and whose body has never been found.  And that's
20 accepted as clarifying information with respect to where the
21 meeting was held and ended up focusing on Bruno before his
22 disappearance.
23          The 10th objection is to paragraph 23,
24 objecting that the defendant had no participation in the
25 violent conduct described in this particular paragraph, and

1  also paragraph, next objection is to paragraph 24 which

2  describes other activity and the kidnap and ultimate murder

3  of the individual as a result of him not paying the drug

4  trafficking taxes.  I will sustain those objections in as

5  much as I don't believe there's any evidence that has been

6  presented in the PSR to tie this defendant to those

7  particular acts of violence.

8          The 13th objection to paragraph 26, this is the

9  relevant conduct assessment.  Once again, this restates the

10  argument made that the defendant did not know the exact

11  number of cocaine, kilos of cocaine to be delivered in this

12  big shipment in which he was to receive 1250 kilos himself,

13  and objecting to be held responsible for the entirety of

14  that.

15          It's acknowledged, he's acknowledged that he

16  knew that his was only a part of the total shipment.  And the

17  additional 1850, while he may not have known the exact number

18  of kilos, the combined load certainly was of the magnitude

19  that he could have reasonably expected and reasonably

20  foreseen would be involved.  And he did have knowledge of the

21  fact there was other cocaine.  So that objection is denied.

22          Actually I think that the defendant -- you

23  know, the quantities we are talking about are way above the

24  top quantity in the drug table, which ends at 150 kilos or

25  more.  So when you get into quantities in the thousands, 1250

1  or 3,000, you're many, many times above what the top level is

2  in the drug table of the sentencing guidelines.  In any

3  event, that objection is denied.

4            The 14th objection is sustained and it's been,

5  I think, acknowledged now that the defendant is allotted a

6  three-level credit for acceptance of responsibility.

7            The 15th is a computation objection based on

8  that.  It's sustained for the same reasons.

9            The 16th objection is to paragraph 83.

10  Actually it's now, I think in the revised PSR, paragraph 84

11  objecting to the grounds that have been set out for upward

12  departure.  I will accept that as argument, but it's

13  properly, the subject matter is properly there and does, in

14  the opinion of the Court, set forth the grounds for possible

15  upward departure as the guidelines do recognize.

16            Have I ruled on all the objections now?

17            MR. MOSBACKER:  Yes, Your Honor.

18            MR. STURGIS:  Yes, Your Honor.

19            THE COURT:  Then based upon the revised presentence

20  investigation report and the addendum thereto, which I adopt,

21  I find that the total offense level is 39, criminal history

22  category is 1.  The recommended period of incarceration under

23  the advisory guidelines is from 262 to 327 months.

24            Very well.  Mr. Mosbacker, do you wish to make

25  a statement on behalf of the defendant?

1     MR. MOSBACKER:  Your Honor, I believe the government

2 and I would like to approach the bench.

3     THE COURT:  Very well.

4

5          (Conference before the bench)

6

7     MR. STURGIS:  Your Honor, I believe that Mr.

8 Mosbacker -- and this is joined by the government -- would

9 like to re-urge the defendant's motion for continuance.  It

10 is a sealed motion, which the Court respectively denied.

11          The reason that the government joins in this

12 motion is that the defendant currently, as the Court may be

13 aware of in the motion, that the defendant has debriefed on a

14 number of subjects.  One of the subjects that the defendant

15 has debriefed on is with a particular person who has been

16 extradited to the District of New York.  The defendant has

17 provided information to the government in which to originally

18 bring the charges, but the totality of it is that that

19 defendant is set for pretrial in two to three weeks, I

20 believe.

21          The agents and the prosecutors up there have

22 asked the government down here, which the government joins

23 in, asking for more time to determine whether or not there is

24 going to be a trial in that case.  Obviously the government

25 feels that the defendant may have earned some credit; but the

government is in a predicament in offering some credit now for helping originally, but in turn now they're coming back to the Court again if he ends up testifying on a Rule 35 even though it's the same production coming out of the defendant. It's the same case.

There are also other events taking place in which the defendant has attempted to cooperated, that the defendant has attempted to cooperate on.  One is the asset forfeiture case which is being done out of the District of Columbia which they're seizing property from other drug dealers, they're international properties.  There is also a case which is stemming out of Chicago which the defendant has debriefed on and is attempting to cooperate in that case.  We are currently trying to find out the status, whether or not that defendant has been extradited to the United States or not.

But going back to the original situation, and now that the Court went through this entire PSI, and I think we are in agreement with everything that the Court stated in the PSI, the government is in this predicament, if you will, in which we have the defendant which has cooperated from the beginning, provided information.  The information was what we used to bring charges.  Now that the target is in the United States then we have the matter of weeks before we have the situation in the Eastern District of New York where the

1   defendant may be a witness.  So that's why the government

2   joins in the defendant's motion, which was urged by the

3   defendant previously and denied by the Court.

4           MR. MOSBACKER:  Well, Your Honor, obviously we agree

5   with the government's request for or urging our own motion.

6               It is also I think to the government's benefit

7   and to the benefit of counsel for the defendant if the

8   defendant remains not sentenced and remains in the Federal

9   Detention Center where he is easily accessible by the agents

10  from the Eastern District of New York.  We are going to do

11  follow-up interviews with the Assistant U.S. Attorney from

12  that same district and the trial attorney from DOJ.  We are

13  all working on the same case.  They have indicated they want

14  to interview him some more.  There is other districts that

15  have indicated they still want to interview him.  And for

16  counsel and for the defendant and I think for the government,

17  it's better if he remains in the Federal Detention Center

18  where he can easily access his counsel and also the

19  government can easily access him.

20          THE COURT:  Now, we did go over all of this before

21  and items on here have come up.  I am going to deny the

22  motion.

23              There is available to the prosecutor to file a

24  motion at a future time to this.  And I think justice is not

25  served to linger on and on before we move.  And so the

1  defendant will still have an opportunity for the government

2  to file a motion and provide it to the Court with additional

3  information.  So it seems that certainly if there is

4  information that the defendant can provide, he can provide

5  this so that he can then enter it at some time in the future.

6          MR. MOSBACKER:  I don't believe the Bureau of

7  Prisons controls that, Your Honor.

8          THE COURT:  Well, the Bureau of Prisons does.  It is

9  important --

10         MR. MOSBACKER:  It does, Your Honor.

11         MR. STURGIS:  I believe it does, Your Honor.

12         MR. MOSBACKER:  However, in my experience they don't

13  take the recommendations from the government as to placement.

14         THE COURT:  Well, I am thinking about the case.  As

15  I understand we are talking about the next three or four

16  weeks.  And often times they don't get assigned from the

17  detention center anyway in that time, so there are a number

18  of things.

19              So I am going to deny that objection.  We can

20  put that on the mark.

21         MR. STURGIS:  Your Honor, I think we can take steps

22  to try or attempt to have that done.  I know in my experience

23  there have been a lot of times where the judgement, I think

24  if the judgment is done and they try to move it along, and

25  the judgment takes a few days, then it may take a month, as

1    the Court pointed out.  So the government has no problem with
2    going through --
3             THE COURT:  We don't know where he will be assigned
4    at this point.
5             MR. MOSBACKER:  It just makes it less, Your Honor,
6    it makes it less accessible for him to see counsel.
7                  Excuse me, Your Honor.
8             THE COURT:  He is in Houston.  The FDC is in
9    downtown.
10            MR. MOSBACKER:  Well, it certainly is easier for
11   counsel to come to downtown Houston.  I think it's easier for
12   him to access counsel.
13                  We have been in communication with -- obviously
14   a whole lot of this is involved in Mexico.  We have attended
15   I don't know how many interviews or debriefings by the
16   government.  It's probably in the several tens of interviews.
17   He has been very cooperative.  And I think the government is
18   satisfied he's provided accurate information concerning his
19   activities and the activities of others, and that's why I
20   think they are using him and intend to use him in the future
21   to make these cases.
22            THE COURT:  Well, I have no objection to that, but I
23   feel that there are things that need to be addressed.  But I
24   will deny the motion at this time and proceed with the
25   sentencing.

1          MR. STURGIS:  We have discussed those options, Your
2     Honor.  Counsel and I have discussed those options.  It's
3     just a matter of timing, as the Court is aware.
4          THE COURT:  Well, I understand.  I will deny this
5     motion.
6          MR. MOSBACKER:  He came to this country in January
7     of 2011, so he has been --
8          THE COURT:  He has been here quite a while.
9          MR. STURGIS:  And he has -- I think this is
10    something that we wanted to bring to the Court's attention in
11    the way of -- and it may be more relevant under Rule 35 so
12    the Court gets the entire picture.  But this defendant was
13    apprehended by the Mexican authorities not pursuant to the
14    U.S. government's effort, but he was apprehended and then
15    approached by the U.S. government agents about cooperating on
16    cases that appear.
17          The defendant through counsel informed the U.S.
18    agents and the government that he would not fight
19    extradition.  He was concerned about that.  And he has, since
20    he came to the United States, debriefed.  In the government's
21    assessment he has been willing to cooperate.  It's just a
22    long process, I am sure the Court is aware of, when you start
23    involving other districts, particularly the people from the
24    District of Columbia and New York, because they have a
25    different schedule, so that's been the delay.  It has not

1  been delay on the part of the defendant and counsel or the
2  government here.

3          THE COURT:  No.  I understand that.

4          MR. MOSBACKER:  Your Honor, some of the arguments I
5  would like to make at sentencing I don't feel comfortable
6  making in front of, in open court.  But, yes, Your Honor, as
7  part of the sentencing memorandum, I included the fact that
8  his family has received threats, and he himself, obviously,
9  and that his family has, his immediate family had to flee
10 Mexico because of the particular threat; that the government
11 was gracious enough to give them temporary status in the
12 United States so they can avoiding being killed essentially.

13          He has had about 17 relatives of his in Mexico
14 killed, and that's part as a result of his absence; but more
15 so a result I think of the fact that by not fighting the
16 extradition, it was pretty obvious that he was going to be
17 cooperating with the United States government and that that
18 resulted in the acts of retaliation.

19          He has also provided the government with
20 avenues of doing proactive work in Mexico that to date have
21 not resulted in any concrete actions and force of actions,
22 but he has provided some individuals that were willing to
23 work with the government; and I think some of that may still
24 be in process, Your Honor.  In other words, he has really put
25 himself out there as far as any type of drug organization in

1   Mexico, and he has done it at great risk to him and his
2   family.  But he made a decision while still in Mexico that he
3   was going to cooperate with the U.S. government to the extent
4   that it was possible.

5          THE COURT:  I understand.  I have taken that into
6   consideration.

7          MR. MOSBACKER:  It was 2009.  And that was a mistake
8   on my part, Your Honor.  He was arrested in 2009, October of
9   2009.  And in January of 2010 I believe the government of the
10  United States, through the Mexican government, served him
11  with a warrant for extradition and filed the paperwork, the
12  actual extradition I think in April, 2010.  So he's been --
13  he was in custody there.

14         THE COURT:  He was arrested by the U.S.?

15         MR. MOSBACKER:  No, Your Honor.  The Mexican
16  authorities arrested him, subjected him to torture.  He was
17  basically arrested by the army down there.  He does have a
18  broken ankle that needs attending because the operations down
19  there were not a success, as a result of the questioning.

20         But he essentially, since January of 2010, it
21  would be our position that he would have been out in Mexico
22  through their process of basically logging out on these kinds
23  of cases but for the intervention of the U.S. government.
24  So I think since January of 2010 he was held at the request
25  of the U.S. government.  And he made arrangements, as Mr.

1    Sturgis announced, to cooperate with the government through
2    speaking with some DEA agents who went to talk to him.  They
3    couldn't debrief him down there because it's not secure, but
4    he certainly indicated that he wished to do that.
5               THE COURT:  Do you have anything else to put on the
6    record?
7               MR. MOSBACKER:  No, Your Honor.
8               THE COURT:  I would ask that we have this motion as
9    well as this request to be carried under seal and kept in the
10   record.
11              MR. MOSBACKER:  Yes, Your Honor.  I appreciate it.
12              MR. STURGIS:  Thank you, Your Honor.
13              THE COURT:  All right.  Thank you.
14
15                         (In open court)
16
17              MR. MOSBACKER:  May I have a minute, Your Honor?
18              THE COURT:  Yes, certainly.
19                  All right.  Are you ready?
20              MR. MOSBACKER:  Yes, Your Honor.
21              THE COURT:  All right.  Thank you.
22                  Mr. Mosbacker, apart from what has been stated
23   at the bench, do you wish to make a further statement on
24   behalf of the defendant?
25              MR. MOSBACKER:  Yes, Your Honor, I would.

1          My client, Mr. Nava-Valencia, as the Court has

2    recognized, has accepted his responsibility in this case.  He

3    has done everything he could since his arrest in Mexico to

4    assist the officials in the United States with matters that

5    he could assist them with, Your Honor.

6          He is very repentant.  He did write a letter to

7    the Court acknowledging his shame at having engaged in the

8    criminal conduct in which he engaged in and his basic vow to

9    work toward becoming a man that will be responsible and would

10   be able to conduct himself within the rules of society

11   through honest hard work.

12         To that end, as the Court is aware from our

13   submission, he has done everything to try to better himself

14   while in prison.  He has attended whatever class he could.

15   He has gone out of his way to obtain correspondence courses

16   especially in the area of Biblical studies.  He is vary

17   diligent in attending worship services and actually assisting

18   in those services in the detention center.  And all of that

19   has been done with the goal of becoming a better man and

20   assuming the role of when he is eventually released as the

21   head of his family who will assist them in bettering their

22   life as well and living a good life.

23         His family is here today, Your Honor, both his

24   immediate and some extended family.  His wife is living in

25   this country now with her children, largely due to the risks

1   that they are subject to in Mexico.  They are becoming part

2   of the community.  They attend church regularly.  Actually

3   Mr. Nava-Valencia at one time lived on the border and

4   attended church in McAllen, the same church that they are

5   attending.

6            And the children are going to school.  His

7   oldest son is attending classes at the University of Texas

8   Pan-American and making sure that he has a sufficient grasp

9   of the English language to proceed to a degree plan.

10           My client, Your Honor, has done everything I

11  think in his power to assist the government to the extent

12  that he could.  He has an agreement with the government, and

13  we would ask that the Court consider the government's

14  request, which I believe has been made in the plea agreement,

15  and also we believe Mr. Sturgis will state, to sentence the

16  defendant at the low end of the sentencing guideline range

17  for which he has been assessed.  We don't have any issue with

18  the guideline calculation, as we've indicated to the Court.

19           And we would also ask the Court to consider

20  reducing that by the amount of time he spent in Mexican

21  prison after the government of the United States served upon

22  him a warrant for extradition in January of 2010.  He agreed

23  to come and eventually was brought to the United States in

24  January of 2011.  So there was essentially 12 months, Your

25  Honor, that he served in a Mexican prison pending the

1    extradition request from the United States.

2              And I would also like the Court to take into

3    consideration, although the Court, obviously, and the

4    government had no control over, or has no control over it,

5    the basically horrible conditions of incarceration in which

6    he served in a foreign country, Your Honor.

7              We would ask the Court to consider all of those

8    things in assessing a sentence at the low end of the

9    sentencing guidelines, Your Honor.

10             THE COURT:  All right.  Thank you, sir.

11             Do you wish to make a statement in your own

12   behalf, Mr. Nava-Valencia?

13             THE DEFENDANT:  Yes, Your Honor.

14             Before anything, Your Honor, I would like to

15   give thanks to God for the presence of my people that

16   survived.  I'd like to ask forgiveness of Your Honor as

17   representative of this government, to this country, the

18   United States for my wrongs, Your Honor.

19             I also want to ask forgiveness of my daughter,

20   of my wife and my daughters who are here and my son and of

21   all my family for all the damage and for all they have been

22   through because of the cooperation in this situation we are

23   going through.

24             To Your Honor and all the citizens of the

25   United States, I ask them earnestly to forgive me.  The truth

1 is that I wasn't fully aware of all the damage that I was

2 causing.  What I want to do is to remedy my wrongs, Your

3 Honor, and be in a position also to contribute, to continue

4 helping this government of the United States.  I want to ask

5 you to have consideration of me, Your Honor, and the

6 punishment that you will impose on me because besides me, my

7 family is going to suffer also because of my actions, Your

8 Honor.

9 That's all.  That's all, Your Honor.  I ask

10 forgiveness.  I am repentant, fully repentant.  Thank you for

11 your attention.

12 God bless you, Your Honor, and your family and

13 this country, the United States.

14 THE COURT:  Thank you, sir.

15 Very well.  Do you wish to make a statement for

16 the government, Mr. Sturgis?

17 MR. STURGIS:  Nothing other than, Your Honor, that

18 we would ask that the Court follow the plea agreement that

19 has been presented to the Court.

20 As for the additional request of the defense,

21 we would leave that in the discretion of the Court concerning

22 the time that the defendant spent in a foreign, being

23 incarcerated in a foreign country.

24 What Mr. Mosbacker stated was correct.  The

25 defendant was apprehended by the Mexican authorities on their

1    own accord.  Subsequently he was served with the extradition

2    papers by the United States government.  During that time I

3    cannot speak whether or not the Mexican government decided to

4    withdraw their charges based upon their own decisions or

5    whether or not it played into their considerations that the

6    United States government was taking an active role in

7    bringing the defendant to the United States.  But during that

8    time the defendant did become aware of what was going on and

9    did represent to the government that he was willing to come

10   over and answer for the charges in the United States.

11            THE COURT:  It is my understanding, though, that he

12   was arrested on charges brought by the Mexican government

13   against him.

14            MR. STURGIS:  That is correct, Your Honor.

15            THE COURT:  And he was held in Mexico on those

16   charges.

17            MR. STURGIS:  That is correct, Your Honor.

18            THE COURT:  Was he tried on those charges in Mexico?

19            MR. STURGIS:  No, Your Honor.  At some point in

20   time -- I do not know the exact date, but at some point in

21   time the Mexican authorities did drop their charges and

22   relinquish the defendant to the United States based on the

23   extradition.

24            THE COURT:  All right.  Thank you, sir.

25                 I will state now the sentence the Court intends

1    to impose.  I will permit any legal objections, if there are
2    any, before it is finally imposed.

3              In assessing this matter and assessing the
4    advisory guidelines with respect to the facts in this case, I
5    observe, as has been observed also in the presentence
6    investigation, in the revised presentence investigation
7    report that while the initial offense level in this case is
8    38 based on drug quantity, that is a guideline level that
9    applies to as few as 150 kilos of cocaine.  In the instant
10   offense where the defendant has engaged in conduct and where
11   the relevant conduct points to at least 10 times that amount
12   and more, with the 3,100 kilos on this particular shipment
13   where he was to receive 1250 himself, the guidelines suggest
14   as one of the approved bases for upward departure that
15   consideration, that is to say, the enormous quantity of drugs
16   that this defendant was engaged in transporting, delivering,
17   receiving probably valued in the tens of millions of dollars.

18             The other factor that the advisory guidelines
19   suggest be considered is where there is evidence of violent
20   acts.  And while the evidence is more limited with respect to
21   the defendant in this respect, he nonetheless was host in his
22   office for the discussions about whom should be held
23   responsible on one load that went down when it was determined
24   it was Bruno and subsequent to which Bruno has disappeared
25   and his body has never been found.  And while the defendant

1  asserts that he had no responsibility there, those are the

2  kind of people that he was running with and dealing with,

3  those were his business colleagues.

4              After considering the advisory guidelines and

5  these factors that would warrant an upward departure, at the

6  same time considering the factors that have been argued by

7  defense counsel, it's the judgment of the Court not to make

8  an upward departure in the determination of the guideline

9  range but to take these kinds of factors, as well as the

10  other factors argued by defense counsel with respect to the

11  defendant's being held on Mexican charges for a year before

12  he was delivered to this country and the like, leading me to

13  conclude that a sentence within that guideline range of 262

14  to 327 months should be sufficient to fashion a sentence

15  sufficient but not less than necessary to achieve the

16  objectives of Section 3553(a).  I will therefore sentence

17  within that guideline range and make the adjustments within

18  that range that the Court feels take properly into account

19  these factors that I have particularly mentioned as well as

20  others that are set forth in the presentence investigation

21  report and the addendum.

22              Pursuant to the Sentencing Reform Act of 1984

23  it's the judgment of the Court that the defendant Oscar

24  Nava-Valencia is hereby committed to the custody of the

25  Bureau of Prisons to be imprisoned for a term of 300 months

1    as to Count 1.

2            Upon release from imprisonment the defendant
3    shall be placed on supervised release for a period of five
4    years as to Count 1.  Within 72 hours after release from
5    custody of the Bureau of Prisons the defendant shall report
6    in person to the probation office in the district to which
7    the defendant is released.  While on supervised release the
8    defendant shall not commit another federal, state or local
9    crime, shall comply with the standard conditions that have
10   been adopted by this Court under General Order No. H1996-10,
11   will abide by any mandatory conditions required by law and
12   shall comply with the following additional conditions:

13           One, the defendant shall not possess a firearm,
14   ammunition, destructive device or any other dangerous weapon.

15           Two, if deported, the defendant is not to
16   reenter the United States illegally.  If the defendant is
17   deported during the period of probation or supervised release
18   term, supervision by the probation officer becomes inactive.
19   If the defendant returns, the defendant shall report to the
20   nearest U.S. probation office immediately.  Supervision by
21   the probation office reactivates automatically upon the
22   defendant's reporting.

23           Three, the defendant shall cooperate in the
24   collection of a DNA sample from the defendant if the
25   collections of such a sample is authorized pursuant to

1   Section 3 of the DNA Analysis Backlog Elimination Act of
2   2000.
3             It's further ordered that the defendant shall
4   pay the United States a special assessment in the amount of
5   $100.
6             The Court finds that the defendant does not
7   presently have the ability to pay a fine within the guideline
8   range, advisory guideline range, and therefore the Court will
9   impose a reduced sentence in the amount of $5,000.
10            Having assessed the defendant's ability to pay,
11  payment of the total criminal monetary penalty shall be due
12  as follows:  Defendant shall make a lump sum payment of
13  $5,000 due immediately, payments to be made through the
14  United States District Clerk, Southern District of Texas.
15  Any portion of the financial penalties that are not paid at
16  present will be due in accordance with the Bureau of Prisons
17  Inmate Financial Responsibility in an amount of not less than
18  50 percent of any wages earned in prison or $25 per quarter
19  and upon discharge to supervised release will be due in
20  payments of 10 percent of gross earnings or $250 per month,
21  whichever is the greater.  Payments are to be made through
22  the United States District Clerk, Southern District of Texas.
23  Those payments, upon release of supervised release, shall
24  commence 60 days after release to supervision.
25            Is there any legal reason, other than those

1  already argued, why the sentence should not be imposed as

2  stated?

3          MR. STURGIS:  Not from the government, Your Honor.

4          MR. MOSBACKER:  No, Your Honor.

5          THE COURT:  Then pursuant to -- yes, sir.

6          PROBATION OFFICER:  Your Honor, is the total payment

7  that is due immediately $5,100?

8          THE COURT:  That would be $5,100 when you add the

9  special assessment, that's correct.

10         PROBATION OFFICER:  Thank you, Your Honor.

11         THE COURT:  Thank you.

12              Then pursuant to the Sentencing Reform Act of

13  1984 the judgment of the Court as stated is imposed upon

14  defendant Oscar Nava-Valencia.

15              Now, Mr. Nava, you have the right to appeal

16  this matter unless you waived your right in the plea

17  agreement.  I have not undertaken to review that aspect of

18  the plea agreement.  Mr. Mosbacker will advise you of any

19  retained appeal rights that you may have.  I will also give

20  to you this written notice of your appeal rights that you may

21  take with you, and a copy of this will be retained in the

22  Court file.

23              Let me say another word, too, Mr. Nava, since

24  you have a very fine family.  I have read letters from wife,

25  children, family members.  You and they need to know you are

 1  not being punished because of your good family or because of
 2  the good things that you may have done in having a good
 3  family.  You are not being punished for going to church or
 4  studying and making these good achievements and courses that
 5  you've taken in the Federal Detention Center.  I commend you
 6  on the good things.

 7              The punishment comes because of the crimes, the
 8  massive crimes that you've committed.  And as these thousands
 9  of kilos of cocaine work their way into this country through
10  your auspices and get out down through the chains of delivery
11  and out on the street to cocaine addicts and crack addicts,
12  they come before the Court, they don't have a good family,
13  they have broken homes, the children aren't cared for, they
14  commit crimes to support their habits.  The devastation to
15  human beings and people and families and children goes on and
16  on and on.  That's why you're being punished, to be in this
17  insidious crime in dealing in these massive loads of this
18  drug that has harmed so many other people and families and
19  children.

20              Is there anything further in this?

21          MR. STURGIS:  Judge, the only thing left is the
22  government would make an oral motion to dismiss the remaining
23  count, which will be followed up by an electronically-filed
24  motion later this afternoon.

25          THE COURT:  Your motion is for what?

1          MR. STURGIS:  To dismiss the remaining count, Your

2     Honor.

3          THE COURT:  The remaining count.  That will be

4     granted.  Thank you.

5               Is there a forfeiture in this, too?

6          MR. STURGIS:  There was no forfeiture in this.

7          THE COURT:  All right.

8          MR. MOSBACKER:  Your Honor, if I could make a couple

9     of requests.

10              One, to ask that the Bureau of Prisons, or

11     recommend to the Bureau of Prisons that Mr. Nava-Valencia be

12     housed as close as possible to the Houston, Texas area in a

13     prison facility that's suitable.

14              And the other request, Your Honor, is made on

15     behalf of his wife, who was unable to come up and have a

16     regular visitation with him this Sunday because of some

17     mechanical problems.  But she would request that she be

18     allowed to speak to him for a few minutes this afternoon,

19     Your Honor.

20          THE COURT:  Well, I cannot grant the second request.

21     That is entirely up to the Marshal.  You will have to deal

22     with the Marshal on that.  I don't undertake to interfere

23     with their responsibilities on that.

24              And as for the first, I will make a

25     recommendation that over the period of the next -- that the

1 Bureau of Prisons not reassign the defendant from his present
2 place for at least 60 days for reasons that counsel for the
3 defense and the government will be able to explain to the
4 Bureau of Prisons.  But I'd make that recommendation as an
5 accommodation.
6             As for any permanent assignment, though, I
7 won't make a recommendation because of all the many factors
8 they have to consider.
9             MR. MOSBACKER:  Yes, Your Honor.
10             THE COURT:  Anything else?
11             MR. STURGIS:  No, Your Honor.
12             THE COURT:  All right.  That concludes this hearing
13 then.  Thank you.
14             MR. STURGIS:  May I be excused, Your Honor?
15             THE COURT:  Yes.  Thank you.
16             MR. MOSBACKER:  May I be excused, Your Honor?
17             THE COURT:  Yes.  Thank you, sir.
18
19
20                 (Conclusion of proceedings)
21
22
23
24
25

1                              CERTIFICATION

2

3

4

5          I, Fred Warner, Official Court Reporter for the

6   United States District Court for the Southern District of

7   Texas, Houston Division, do hereby certify that the foregoing

8   pages 1 through 32 are a true and correct transcript of the

9   proceedings had in the above-styled and numbered cause before

10  the Honorable EWING WERLEIN, JR., United States District

11  Judge, on the 7th day of January, 2014.

12          WITNESS MY OFFICIAL HAND at my office in Houston,

13  Harris County, Texas on this the 3rd day of May, A.D., 2022.

14

15

16

17

18                           ___/s/ Fred Warner___
                             Fred Warner, CSR
19                           Official Court Reporter

20

21

22

23

24

25